**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **J.B.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.** |
| | ) | |
| **ALABAMA HIGH SCHOOL** | ) | |
| **ATHLETIC ASSOCIATION;** | ) | |
| **DR. ERIC MACKEY, in his official capacity** | ) | |
| **as Alabama State Superintendent of** | ) | |
| **Education; LYMAN WOODFIN,** | ) | |
| **in his official capacity as the** | ) | |
| **Superintendent of Autauga County Schools;** | ) | |
| **ALABAMA** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff J.B. is a minor student who is currently a Senior at Prattville High School.

2. Defendant the Alabama High School Athletic Association ("AHSAA") regulates athletic competition amongst its members, which include public and private high schools throughout the State of Alabama and, specifically, Prattville High School. Its principal office is located in Montgomery, Alabama.

3. Defendant Dr. Eric Mackey is the Alabama State Superintendent. He is sued in his official capacity only. His office is in Montgomery, Alabama.

4. Defendant Lyman Woodfin is the Superintendent of Autauga County Schools. He is sued in his official capacity only. His office is in Prattville, Alabama.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. §§ 2201 and 1331, as well as supplemental jurisdiction under §1367(a).

6. Venue is proper in this District and Division because all Parties reside therein.

**STATEMENT OF FACTS**

7. Plaintiff J.B. transferred from Carver High School in Montgomery to Prattville High School as a Junior (11th Grade) in the spring of the 2025-2026 academic year. He is currently a Senior (12th Grade) at Prattville High School.

8. J.B. was very successful at Carver his Freshman (9th Grade) year. He joined the football team and started making all A's and B's. Unfortunately, his mother kicked him out of the house the summer between his 9th and 10th grade years, stating that he was old enough to do stuff on his own and make his own decision.

9. J.B. started bouncing around between different relatives and friends, staying primarily with one of three people who live in Prattville and Millbrook. His uncle (where he stays much of the time), godmother, and auntie all tried to work together to get him back to Carver, but transportation was consistently a problem. Sometimes he could stay in Montgomery, where he would walk thirty to forty minutes to school, sometimes as early as 5 a.m.

10. Despite the disruption in his life, including a knee surgery resulting from an injury that he had sustained in middle school, J.B. managed to pass all his classes his sophomore year, although his grades dropped.

11. J.B. tore his ACL in football practice before school started. He obviously was not able to play football – and he also wasn't able to manage the walk to Carver from where he stayed in Montgomery anymore. He had sixty-one absences his junior year at Carver, fifty-eight of which were unexcused. Unsurprisingly, he ended up failing Algebra II and U.S. History.

12. Because he stayed mostly in Prattville, J.B. started trying to go to Prattville High School before his junior year.

13. Finally, in the spring of his junior year, his situation caught the attention of MPS. MPS declared him to be homeless and an unaccompanied youth for the purposes of the McKinney-Vento Act. He was then allowed to transfer to Prattville High School late in the spring under the provisions of the Act. His attendance immediately improved.

14. J.B. attended summer school at Prattville, where he passed both Algebra II and U.S. History.

15. J.B. does not remember the last time he saw or talked to his mom. (He often stays with his aunt in Prattville, sleeping in her daughter's bed when she's not home. But when she comes home, he has to go stay with his godmother, where he also shares a bed. He also sometimes stays with his uncle.

16. The Alabama High School Athletic Association (AHSAA) regulates high school sports at their member institutions, including eligibility of student-athletes to play sports.

17. AHSAA's eligibility rules are reflected in their bylaws, which are contained in the AHSAA 2026-2027 Handbook. Most transfer students are required to wait a year

before they can play varsity sports. Transfer students who begin after the start of the school year may be completely excluded from athletics.

18. A student whose parents make a "bona fide move completely out of one school zone into another may transfer all his/her rights and privileges to the member school that serves the area where his/her parents reside." Factors for determining whether a move is bona fide include that the "household furniture of the family must be vacated into an occupied house or apartment" and that all "principal members" of the family reside in this new residence.

19. A change in custody or legal guardianship does not establish immediate athletic eligibility. Even if a student moves to a different district to live with a court appointed guardian, that student will still not be eligible to play if their parents also do not move, regardless of the circumstances of the appointment. A student who moves without their parents can only transfer their eligibility if they are declared dependent and are placed into a foster home by the Department of Human Resources.

20. These eligibility rules only provide do not make any allowance whatsoever for students who are homeless, particularly when a student is an unaccompanied minor, as that term is defined by the McKinney-Vento Act. It is the practice and policy of the AHSAA to deny immediate eligibility to all unaccompanied minors.

21. AHSAA enforces its rules both directly and through its requirement of requiring so-called restitution. A student who participates while ineligible will be deemed ineligible for a period of time equal to the time of the participation while eligible. Its

School Restitution Rule is designed to discourage any challenges to its rules by punishing the entire school for the actions of a single student, as follows:

> If a school that has been disqualified or a student who has been declared ineligible is allowed to participate in interscholastic competition because of a court restraining order and/or injunction against the school or the AHSAA, and if such restraining order and/or injunction is subsequently vacated, stayed, reversed or a final judicial determination is made that injunctive relief was not justified, then all contests in which such ineligible student participated shall be forfeited as well as any honors, points or awards received by the school or the ineligible student. In addition, the school may be fined or placed on probation in the interest of restitution and fairness to other member schools.

22. In April 2026, Prattville High School's Athletic Director Blake Boren contacted the Alabama High School Athletic Association to ask for clarification of the effect of McKinney-Vento status on a student's eligibility to play varsity sports. Ryan Barkley responded by asking for verification of certain information related to the McKinney-Vento status. In July, after discussing the matter further at a conference, Mr. Boren reached out again and provided additional information.

23. AHSAA responded by stating as follows: "Based on the information provided and a phone conversation, this student-athlete is not currently eligible for varsity competition at Prattville High School due to him being an unaccompanied youth."

24. On August 14, 2026, a formal letter was sent from AHSAA stating that it had "concerns over the designation of the Student as an unaccompanied youth under the Act."

25. On August 21, Lyman Woodfin, the Superintendent of the Autauga County Board of Education, responded to AHSAA after seeking legal counsel, setting forth the additional investigation that Autauga County Schools ("ACS") had undertaken into J.B.'s

status as an unaccompanied youth and provided extensive information regarding the District's responsibilities towards J.B. under McKinney-Vento.

26. An appeal hearing was conducted on August 22 with AHSAA's Legislative Council (albeit without benefit of the supporting documentation sent to the AHSAA).

27. It is frankly clear from the discussion of the Legislative Council that the AHSAA does not have any regard whatsoever for the provisions of the McKinney-Vento Act. Some of the "highlights" from the brief discussion reflected in the recording include as follows:

- One member stated that she "just kinda feel[s] like, if they could have a lawyer sitting for the athletic side, why not just use that same lawyer to emancipate him…There's already a lawyer, and it just seems like they could have used that same legality to fix that situation."
- All members expressed concern that allowing J.B. to play would be a "slippery slope."
- One member said "It's tough because, here's my thing, my heart goes out…I feel like we got to protect the Association…Y'all know exactly what's fixing to happen if this can happen. I mean, every kid's going to be deemed unaccompanied youth…bona fide move is gone."

28. The age of majority in Alabama is 19, although an unemancipated minor who is 18 years old and of sound mind can enter into a binding contract. Ala. Code § 26-1-1. A minor can only be emancipated once they reach the age of 18. Ala. Code § 26-13-1; *see also Anderson v. Loper*, 689 So.2d 118, 120 (Ala. Civ. App. 1996) ("Emancipation of a

minor child is governed by statute and can occur only when a minor child has reached the age of 18.") J.B. is not yet 18.

29. On August 25, 2026, Heath M. Harmon, AHSAA Executive Director, notified Dr. Daniel Farris, Principal of Prattville High School, that AHSAA would not reconsider its prior ruling of ineligibility.

30. J.B. was not able to play football his junior year because of his injury. He currently has a scholarship offer based on his performance during the summer to Texas A&M – Texarkana, which is just starting its football program, but he needs to play to keep this offer. AHSAA's decision to deny him eligibility has real world consequences for his future. Every game that he misses represents lost opportunity.

31. Perhaps even more devastatingly, every game that he misses represents yet another time that adults have let him down and yet another blow to a child who has already struggled through significant adversity.

## COUNT I

## VIOLATION OF THE MCKINNEY-VENTO ACT

32. J.B. hereby adopts and incorporates by reference the allegations contained in Paragraphs 7-31 of this Complaint.

33. This claim is brought against all Defendants pursuant to 42 U.S.C. § 1983.

34. The McKinney-Vento Act, 42 U.S.C. § 11431 *et seq.*, protects the educational rights of homeless children and youth. This Act declares the following as the policy of Congress:

> (1) Each State educational agency shall ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education, including a public preschool education, as provided to other children and youths.
>
> (2) In any State where compulsory residency requirements or other requirements, in laws, regulations, practices, or policies, may act as a barrier to the identification of, or the enrollment, attendance, or success in school of, homeless children and youths, the State educational agency and local educational agencies in the State will review and undertake steps to revise such laws, regulations, practices, or policies to ensure that homeless children and youths are afforded the same free, appropriate public education as provided to other children and youths.
>
> (3) Homelessness is not sufficient reason to separate students from the mainstream school environment.
>
> (4) Homeless children and youths should have access to the education and other services that such children and youths need to ensure that such children and youths have an opportunity to meet the same challenging State academic standards to which all students are held.

42 U.S.C. § 11431.

35. The term "homeless children and youths" is defined as "individuals who lack a fixed, regular, and adequate nighttime residence," including "children and youths who are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason." 42 U.S.C. § 11434a(2).

36. An "unaccompanied youth" is a homeless child or youth not in the physical custody of a parent or guardian." 42 U.S.C. § 11434a(6)

37. Importantly, the Act also specifically defines the terms "enroll" and "enrollment" to include both attending classes "and participating fully in school activities." 42 U.S.C. § 11434a(1).

38. The McKinney-Vento Act is administered through grants to each individual State education agency, which in turn administers sub-grants to local educational agencies. These terms are also specifically defined. A State education agency "includes the State educational agency in a State in which the State educational agency is the sole educational agency for all public schools." 20 U.S.C.A. § 7801. A "local educational agency" is "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or of or for a combination of school districts or counties that is recognized in a State as an administrative agency for its public elementary schools or secondary schools." *Id.*

39. The relevant State educational agency is the Alabama State Department of Education. Alabama has received over two million dollars in grants to provide education for homeless children and youths each year in FY2023, FY2024, FY2025, and FY2026. U.S. Department of Education, Education for Homeless Children and Youths Funding Status & Awards, available https://www.ed.gov/grants-and-programs/formula-grants/formula-grants-special-populations/education-homeless-children-and-youths#funding-status-awards, last accessed 08/27/26.

40. There are also two local educational agencies implicated in this case: Autauga County Schools and Montgomery Public Schools. In FY25-26, Autauga County received $35,000 as a subgrant from the State; Montgomery County received $85,000. Alabama Department of Education, Education for Homeless Children and Youth FY25-26

Allocation, available https://www.alabamaachieves.org/wp-content/uploads/2025/10/StateSuperIn_Memo_20251031_FY26-2007-FiscalYearFY2026McKinney-VentoSubgrantAwards_v1-0.pdf, last accessed 08/27/26.

41. In order to receive and maintain eligibility for grant funds, State and local education agencies must ensure compliance with the McKinney-Vento Act's guarantees of ensuring full educational access to homeless children and youth.

42. A child or youth who becomes homeless is entitled to attend either in his "school of origin," i.e., the school in which he was enrolled originally, or to enroll "in any public school that nonhomeless students who live in the attendance area in which the child or youth is actually living are eligible to attend." 42 U.S.C. § 11432. This decision is to be made in the student's best interests, "including factors related to the impact of mobility on achievement, education, health, and safety of homeless children and youth, giving priority to the request of the child's or youth's parent or guardian or (in the case of an unaccompanied youth) the youth."

43. The selected school "shall immediately enroll the homeless child or youth" – and the student shall stay "enrolled" at the school pending final resolution of any dispute pursuant to established procedures that guarantee students notice of their rights and an opportunity to be heard on their future. *Id.*

44. School personnel are forbidden from stigmatizing homeless children and youth, and they cannot be segregated.

45. A parent or guardian of a child or, in the case of an unaccompanied youth, the youth himself must be provided with due process in the course of the determination of placement, including through appeal procedures.

46. Properly trained local educational agencies liaisons are explicitly given authority to affirm a student's status as homeless under the Act, as follows:

> A local educational agency liaison designated under paragraph (1)(J)(ii) who receives training described in subsection (f)(6) may affirm, without further agency action by the Department of Housing and Urban Development, that a child or youth who is eligible for and participating in a program provided by the local educational agency, or the immediate family of such a child or youth, who meets the eligibility requirements of this chapter for a program or service authorized under subchapter IV, is eligible for such program or service.

42 U.S.C. § 11432(g)(6)(D).

47. AHSAA is not authorized by law to make any determination of a student's status as either homeless and/or an unaccompanied minor for the purposes of invoking the protection of the McKinney-Vento Act.

48. The eligibility procedures outlined in the AHSAA's bylaws violate these requirements on their face by failing to provide for immediate eligibility of transfer status for youth and children that are protected by the McKinney-Vento Act.

49. AHSAA's student and school restitution rules conflict with the requirement for immediate enrollment.

50. AHSAA's application of its procedures to deny J.B. eligibility violates his rights under the McKinney-Vento Act.

51. Further, by allowing AHSAA unfettered discretion to deny immediate eligibility to homeless students, particularly those qualifying as an unaccompanied minor under the Act, Superintendent Mackey and Superintendent Woodfin have failed to ensure compliance with the McKinney-Vento Act, as required by the Act.

52. J.B. has been damaged by AHSAA's denial of his eligibility and by Superintendent Mackey and Superintendent Woodfin's failure to ensure compliance with the McKinney-Vento Act.

**COUNT II**

**VIOLATION OF J.B.'S RIGHT TO EQUAL PROTECTION**

53. J.B. hereby adopts and incorporates by reference the allegations contained in Paragraphs 7-31 of this Complaint.

54. AHSAA denied eligibility to J.B. in order to protect itself, without ever considering J.B.'s rights.

55. Any fear that the McKinney-Vento Act will be abused can be remedied through other means; however, speculation that another student in another school might abuse the "privilege" of being declared homeless and/or an unaccompanied youth should not be used to deny J.B. his rights under federal law.

56. AHSAA's denial of eligibility to J.B. because he is a homeless, unaccompanied youth is arbitrary and capricious and therefore violates his right to Equal Protection as guaranteed by the Fourteenth Amendment of the United States Constitution.

57. Superintendent Mackey and Superintendent Woodfin may be held liable for this violation for the purposes of prospective relief because they enforce AHSAA's decision.

**COUNT III**

**VIOLATION OF RIGHT TO PROCEDURAL DUE PROCESS**

58. J.B. hereby adopts and incorporates by reference the allegations contained in Paragraphs 7-31 of this Complaint.

59. By virtue of the McKinney-Vento Act and the State regulations and policies adopting its requirements, J.B. has the right to be protected as a homeless, unaccompanied youth. This right cannot be denied without procedural due process.

60. Pursuant to its policies, AHSAA did not provide J.B. with any process whatsoever before deeming him ineligible. The Legislative Council did not even review all applicable documents.

61. Superintendent Mackey and Superintendent Woodfin may be held liable for this violation of the purposes of prospective relief because they enforce AHSAA's decisions despite the obvious lack of process as required by both the Fourteenth Amendment and the McKinney-Vento Act.

**COUNT FOUR**

**ILLEGAL ACTION UNDER STATE LAW**

62. Plaintiff J.B. hereby adopts and incorporates by reference the allegations contained in Paragraphs 7-31 of this Complaint

63. The decision to deny J.B. eligibility is the product of fraud and collusion because it is not actually based on any factors relevant to J.B., but instead arises out of the desire of AHSAA and certain members thereof to prevent transfers in the future that they fear could be used against them and their teams.

64. The decision to deny J.B. eligibility was made without jurisdiction because AHSAA is not entitled to question the affirmation of a student's protected status made by a properly trained local education agency liaison (or, in this case, two properly trained liaisons).

65. The decision to deny J.B. eligibility is arbitrary.

**PRAYER FOR RELIEF**

Plaintiff J.B. respectfully requests the following relief:

A. A Temporary Restraining Order and a Preliminary Injunction, as follows:

a. Finding J.B. is likely to prevail on the issue of whether his status as a homeless, unaccompanied youth entitles him to immediate "enrollment" at Prattville High School, which is defined by the McKinney-Vento Act, 42 U.S.C. § 11431 *et seq.* to include full participation in all extracurriculars, programs, and activities, including varsity athletics, for which he would otherwise be eligible;

b. Finding that J.B. is likely to suffer irreparable harm if he is not allowed to play football;

c. Finding that (unlike J.B.), the Alabama High School Athletic Association is not likely to suffer any actual harm because J.B. is allowed to play football;

d. Forbidding Dr. Eric Mackey, in his official capacity as the Alabama State Superintendent of Education, and Lyman Woodfin, in his official capacity as the Superintendent of Autauga County Schools, from allowing the Alabama High School Athletic Association's determination that J.B. is not eligible to play varsity athletics under its rules to affect J.B.'s right to fully participate as a student at Prattville High School, as guaranteed by federal law.

e. Forbidding the Alabama High School Athletic Association from seeking to enforce its determination that J.B. is not eligible to play varsity athletics under its transfer rules for any reason whatsoever, including, but not limited to, because of any disagreement with the affirmation of his homeless status or because of its refusal to generally acknowledge the rights of homeless students under federal law.

f. Forbidding the Alabama High School Athletic Association from seeking to enforce its rules of restitution against either J.B. or Prattville High School.

B. A declaration that the Alabama High School Athletic Association's eligibility bylaws violate the McKinney-Vento Act and the United States Constitution to the extent

that they refuse to allow students who transfer schools because they are deemed homeless and/or an unaccompanied youth to become immediately eligible for athletic competition.

C. A declaration that the Alabama High School Athletic Association's ruling regarding J.B.'s eligibility violates the McKinney-Vento Act, the United States Constitution, and Alabama law.

D. Injunctive relief against the Alabama High School Athletic Association, Dr. Eric Mackey, in his official capacity as the Alabama State Superintendent of Education, and Lyman Woodfin, in his official capacity as the Superintendent of Autauga County Schools, forbidding them from allowing the Alabama High School Athletic Association's determination that J.B. is not eligible to play varsity athletics under its rules to affect J.B.'s right to fully participate as a student at Prattville High School, as guaranteed by federal law.

E. Compensatory damages from the Alabama High School Athletic Association in an amount to be determined by a jury to compensate J.B. for the embarrassment, stress, disappointment, and fear for his future that its decision has caused him during a vulnerable period in his life, including, but not limited to, because it has forced him to publicize his story in order to enjoy rights protected by federal law.

F. Attorneys' fees and costs.

G. All other relief that a jury may deem to be appropriate.

**s/Jamie Helen Kidd Frawley**
J. RANDALL MCNEILL
JAMIE HELEN KIDD FRAWLEY (ASB-7661-M76H)
ROBERT CAMP
Attorneys for Plaintiff
WEBB, MCNEILL, & FRAWLEY, P.C.
P.O. Box 238
Montgomery, AL 36101-0238
(334) 262-1850 - T
(334) 262-1889 – F
jfrawley@wmwfirm.com

DEFENDANTS TO BE SERVED BY PROCESS SERVER.